If please accord Robert Jensen on behalf of Yair Jacoby. Maybe move the mic just a little so we can all hear you. And if I could I'd like to reserve three minutes in rebuttal. I think it's, in this insurance dispute case, I think it's important for the court to appreciate several aspects of this. Of course it's a Nevada insurance issue.  is the public policy in the state of Nevada concerning stacking. Up until 1979, stacking was attempted for underinsured motorist coverage in our state, but was routinely held to be an improper practice. It was invalidated no matter what was attempted. And this was true even if there were multiple policies or multiple coverages on multiple vehicles and a multi-car discount was given for each of the policies. They just held it to be unfair and unjust to the citizens of the state of Nevada. In 1979, the Nevada legislature enacted 687D.145 in an attempt to give insurance companies an opportunity to issue valid anti-stacking endorsements. They did it though with very strong provisos. In order for insurance companies to effectively block stacking, they had to follow three requirements. They had to have the provision in the policy prominent and set aside from other portions of the policy which would direct the reader's attention to that provision. They wanted to make sure the citizens knew that there was this particular anti-stacking provision in the policy. They also required the policy to be written in very clear terms. And the third requirement was they required the insurance companies to give a multi-car discount so that the citizens of the state weren't paying a full coverage for coverage that they were never going to get. Well, counsel, I mean, I think we got the background. Okay. I'm just looking at the anti-stacking provision, which is obviously the focus of our attention. And I guess this is my question. Let's say that we agree with you that in some fashion this provision is ambiguous, right? And we can get into the specifics in a second. But doesn't that just get you to the proposition that we're supposed to figure out what a reasonable consumer, a reasonable insured would, you know, what that person's expectations would be for coverage looking at this provision? Right. So if that's true, I just want to frame up what my issue with your position, and I want to hear your response. Put aside lawyers, just lay people looking at this. Why would someone think that the insurance company is trying to prevent stacking if you're in an auto or if you're, you know, a pedestrian, but they wouldn't allow it if you're on a bicycle? It just doesn't seem to me to make any sense for a lay person to look at this and say, oh, great. You know, I'm, you know, I come away feeling good because as long as I'm out on a bicycle, I know I'm going to get stacking. It's just everything about the provision suggests that there will not be stacking in any circumstances. And so why wouldn't a reasonable consumer take away that expectation? Right. If you look, there are several versions of anti-stacking provisions that occur in the State of Nevada. And this is one of them. And we've got several iterations that have occurred and brought before the Nevada Supreme Court. This particular one starts off with two specific subparts, A and B. A says if you're an insured auto, there's no stacking, and you're limited to the coverage on that particular auto that's involved in the collision. Subpart B says if you're in some other auto that's not an insured auto or you're a pedestrian, then you're limited to just one vehicle on the declarations page. The second sentence, which is not indented, it's all part of this, it's all a cohesive unit, starts off with this limit of coverage, which since there is no limit of coverage previously described other than subpart A, refers the reader back up to subpart A and B. It's followed by the third sentence. And the third sentence then goes into a discussion of we're not going to allow stacking on other motor vehicles with the insured auto that covers the loss. Okay. When you have someone like Mr. Jacobi, if you step back from a practical standpoint and you look at how can auto accidents cause damage to people, it's going to be with the insured in an insured auto, with the insured not in an insured auto, with the insured maybe walking down the street, what's a more likely scenario as well? And that would be somebody that's a bicyclist riding along, just like Mr. Jacobi who was in a bicycle lane. Okay. But I got all that. But I mean, my question though is why would a reasonable insured, knowing that the insurance company in the strongest possible terms does not want to allow stacking if you're in a car or if you're on, you know, on foot, why would it want to allow stacking if you're on a bicycle? I just, that just doesn't even make sense to me. The answer to that is that the insured's intent here is not relevant under Nevada law. The insured, or the insurance company, I should say the insurance company's intent is not relevant under Nevada law. Nor your individual client's intent is not relevant. It's just the reasonable, hypothetical, objective consumer, right? Agreed. Agreed. Okay. And so all the reasonable, objective consumer has to go on is they've got the language and the policy. And when they look through the language and the policy, like Mr. Jacobi, he sees nothing about bicycles in here anywhere. What he does see is he says, he sees if I'm in an insured auto. If I'm not in an insured auto or I'm a pedestrian, that's all he sees for specific scenarios as to when the anti-stacking endorsement would block coverage. Well, I mean, there's more language there, and that's those next two sentences, which I understand your structural argument, and I think there's merit to it. But I guess I'm still stuck with the feeling that, I mean, it's the argument you're making is an argument that only a lawyer could love, it seems to me. It's very technical. And I just wonder if lay people reading this, I mean, I think if you showed this to 10 random people off the street and just said, hey, if this provision was in your policy and you were riding a bike, do you think you'd get stacking? I think most people would say probably not. It says in pretty clear language that they don't want to allow that. The problem that I have with the Court's suggestion in that regard is that GEICO drafted this policy. And when GEICO drafted this policy, they used specific words, and the sole sentence that GEICO is relying upon is that third sentence. And the third sentence, I think I've read it so many times I can almost say it by heart. But let me grab it just to make sure I... But your basic argument, counsel, is that it's an issue of fact, that when you look at all of this, that it should go to the jury so the jury could determine, you know, whether or not it says one thing or the other. That's your basic argument, right? I don't think so, Your Honor. I think that this is really a question for the Court to determine. And the reason I say that is because we have this kind of a unique situation here on that third sentence where we have the insurance company writing a specific set of words that they're relying upon to block stacking in this case. And then we also have the vice president of language development at GEICO saying that other motor vehicles are not the vehicles on this policy. So you're saying that you should prevail and we should grant summary judgment in your client's favor? Correct. Okay. All right. And the reason for that is because if this is even difficult to understand, not even ambiguous, it fails. It's void, period. That's the end of the discussion under the statute. Okay. GEICO's 30B-6 designate also said that when you go to your insured auto, which is a defined term under the policy, that refers the reader to all of the vehicles on the policy. And he admitted in deposition, when I took his deposition, he said all of those vehicles cover the loss. That's not how I read that. I went through that, too, and I thought it could be interpreted differently. Yeah. I don't think that's what he was intending. I don't think that's your strongest point, so let me put it that way. Well, maybe you can respond, though, directly to the district court's construction of that third sentence. I mean, maybe you're right about the second sentence that the reference to this limit has to, by definition, refer back to A and B, the two scenarios. But the district court, I think, read that last sentence as really a standalone catch-all provision that's not tied to, you know, subparts A and B. Why is that erroneous? Well, and I think the reason that's erroneous is because anybody that looked at this particular provision would say, if that was really intended by GEICO to mean a standalone provision, it would have been a standalone provision. So you think if they had just sort of broken out that last sentence into a, you know, started it on the left margin there, right, its own. Correct. Then you'd be out of luck. I think that if they had indented that or set it off, then there would be some serious problems for our position. Let's just say that it started the same way that this limit does. It was just lined up right underneath the text on the left margin, but it was so it wasn't connected in any way to the second sentence, right? But there was a separation of it? Yeah. It was just separated out so it starts on a new line. Then you say that, nope, you're out of luck. Your client would lose? Correct. So it's just the fact that it was, there's no paragraph break? That's what is dispositive? No, no. Because I also view this, Your Honor, with that the insured vehicle that covers the loss is not defined anywhere in the policy here. What it really means, actually it really is, it's defined as all three vehicles on the declaration. If you go back to the Coatney decision and the Bove decision, what you're going to find is you're going to find that the actual insured vehicle that covers the loss is specified in the policy because it falls under A or B. Well, actually A in both cases. No, in B, you're just going to have to pick one because by definition, you're not in your insured auto. Right. In B, it says any one of the vehicles on the declaration. That last sentence is clearly framed in the singular. It's not, there's nothing plural about it. It says your insured auto that covers the loss.  But I assume it's going to be whichever one carries the highest limit. Right. But it's not talking about plural, all of the autos covered under the policy. That's not what that last sentence is talking about. But it's a defined term in the policy. And when you go to the definition on the page before in the excerpt of record, it says that an insured auto are the vehicles that are on the declarations page that are insured for liability coverage. So what you're asking then for the court to do, or for an insured to do, is to look at this and say, okay, this means singular. But wait a minute, let me go take a look at how Geico instructed me to view this because they've specifically defined it. And then they go and they look and they go, oh, okay, so all these vehicles are covered, can potentially cover the loss. So now I have to go back again and say, okay, I understand that they've defined it that all the vehicles on the declarations page cover the loss. But now I'm going to go back and I'm going to refer to the singular usage. Now, is this a typo? Or am I supposed to disregard what their definitional use is in the policy? That's the type of problem that 687B's clarity requirement was designed to prevent allowing anti-stacking provisions to occur. I realize this is a somewhat technical argument. But a lay insured, can we ask anything less of them to actually sit down and read the policy, read the definitions that Geico put in the policy, and make a determination based upon what Geico said? I will say that when I did depose Mr. Wander, he did say at excerpt of record, page 2112, that other motor vehicles are not on the policy. And then he did say later on at excerpt of record 23, page 123 of the deposition, that all three vehicles on the declarations page cover the loss. That's straight from Geico's director of policy development. So if Geico itself says all three vehicles cover the loss, and the definition down here on the third sentence says the insured autos that cover the, or the insured auto that covers the loss is all three of those vehicles, and you juxtapose it. I know exactly the passage you're referring to, if I'm, it's on page 123, right? Correct. And yeah, he agrees that you were the one taking the deposition? Yes. He says correct in answer to your question. But then he adds language that makes it clear that, no, he's only agreeing that it could be assigned to one particular vehicle, right? Right. And that raises the next question. So how is it assigned to one particular vehicle? Where is that described in the policy? The insured's just left with all three vehicles cover the loss, okay. So does that mean they all cover the loss and stacking occurs here? Or does he have to make another step, another deduction, which our Supreme Court has said in the Newman case, insureds are not required to make deductions. They're not required to engage in a process of elimination and trying to figure out what the policy says. Are they required then to say, okay, so that there must be some way or mechanism for the insurance company to describe the loss to a particular vehicle because it's not described in this policy anywhere. Okay, let me ask you to stop there. Judge Gould, do you have questions for plaintiff's counsel? No, I thought it would probably be helpful to me to let plaintiff's counsel have a little rebuttal time, even though he's used up almost all his time. Yeah, I agree. Okay, so let's hear from the defendant, from the insurance company rather, and then we'll give you some time to respond. Counsel, may I ask you just one question as you come forward? And you may start out by saying whatever you'd like, but I'd like you to just tell us whether or not you are familiar with cases involving anti-stacking that involve other than A or B, that is, a person who's in an auto and a person who's a pedestrian, whether or not you had any construction on people who are riding a bike or any other context that would help us. The answer to that is no, Your Honor. If you look at the Nevada cases, they all deal with someone in a vehicle, so they don't reach the issue of a pedestrian. And one of the things that the Court should understand is if you go back to the Koteny case, the two categories or the two sections of that first sentence are actually alternative anti-stacking methods. That's what the Court said, anti-stacking methods. It doesn't mean they're the exclusive ones. And both of those anti-stacking methods lead to coverage under one insured vehicle only. There's a lot better way to do this, though. Aren't there a lot better ways to do this than happened here? You know, Your Honor, Judge Oliver, what our Supreme Court has said is this language is sufficiently clear. And it's using exactly the same language in the Koteny and Bodie cases that we have in the Geico case. I understand. If your question is, is there another way to do it, I guess anything's possible. Well, wouldn't it have been better? Let me give you an example. Wouldn't it have been better to take that third sentence, if you intended to say what you say it means, and to say that under no circumstances will coverage, you know, be anti-stacking in regard to coverage under this policy? Wouldn't that be a lot better? Wouldn't that be a lot clearer to a lay person? I don't think there's any ambiguity in that. If you look at the structure of the anti-stacking provision as a whole, you have three sentences. And in three different ways in that anti-stacking provision, it tells the insured that in the case of an accident, they're only gonna be able to apply the coverage of one of their insured vehicles. And one of their insured vehicles is defined under the policy as an vehicle. It's not three vehicles. It's one vehicle covered by this policy. So three policies may cover it, but only one can be used. And so the question is, then you can't stack on top of the one that's gonna be used for coverage, but you've got A, it has to mean something that talks about when you're in an auto, and B, that talks about when you're a pedestrian. I assume there are other kinds of coverages, fact situations that are covered under the policy as well. They're not in C and D. And then you go to this paragraph that comes right after A and B. And it talks about the limit of coverage applies, which must be A and B. And then you have this one singular sentence that comes at the end of that, and you expect the consumer to figure out what that third sentence means. My response to that is very simple. When you refer to this limit of coverage, if you look at the entire provision, each time they talk about a limit of coverage, it's for one vehicle, including the last paragraph. If they were referring only to the two alternative methods of anti-stacking that are in the first paragraph, they would say these, or the two above, or something like that. They don't say that. It's one cohesive anti-stacking provision that includes all. That really isn't the way that provision is structured, counsel. I mean, in fairness, there's no, this limit, that reference in the second sentence, there's nothing else it could refer to other than scenario A and B, because those are the only two scenarios in which the limit is expressed, right? I don't know why your client, I mean, I do know why your client drafted this way. I mean, but all of those other cases we have, as you conceded, involved someone who was either under A or under B. Well, actually, all of them include someone that's under A. Oh, excuse me. You're right. I thought there was under B also. Right, a pedestrian. But both in an, not a pedestrian, but both in vehicles. Okay, both in, but there's not, we don't have a case, obviously, in which somebody might fall into Category C, which is someone on a bike. And I guess I, I thought the plaintiff's structural argument seemed to me the strongest argument on their side, because, you know, what you really want us to do is read that last sentence as a new subpart C, right? You got scenario A, scenario B, and then you want C, that last sentence to be read as kind of a catch-all subpart C, and that's not the way the provision is structured. I think what we view the provision as being read, as being read as a whole. In the, in the provision, there are three places where the insured is told that they're only going to be entitled to coverage on one insured vehicle under that policy. And that includes the final sentence. Now, the final sentence is a more general one, but it has the same effect. It says there's not going to be any stacking except for one insured vehicle. Right. Which is in this policy. But the way the provision is set out on the page, right, the insured is being told that basically the world consists of two scenarios in which stacking is not going to be prohibited. If you're in a car, if you're a pedestrian. The next two sentences, the way they're set out, they're clearly just modifying what was specified in subparts A and B. Your Honor, I believe that when I look at it, and what an average person would look at it, they would take, as Coteney has said, they'd take the first sentence, which has two alternative methods of anti-stacking. That doesn't mean they're the only methods. And that's one thing that we got out of Coteney. One of the arguments in Coteney was that they had not followed the vehicle with the highest limit. And the Court said, well, in this provision, the insurer has made it clear that in B, when you're not in a vehicle, that's insured under the policy, then you're limited to one of the three insured autos. So that's two alternatives. An insurance company could come up with a third one, certainly. But there is a third one in this provision, and that is the last phrase. And if you look at the last sentence, it says exactly what it says. You just can't stack on. You're in scenario A or B, right? That's what I'm saying. It's not as though it's set off as a separate catch-all provision. Like, just in case we didn't cover it with A or B, here we've got this general provision C. The way it's laid out, it says, if you're in category A or, you know, scenario A or B, here's some further explanation of what you're not going to get. That's, to me, how it's structured. And all I can tell the Court is that the Nevada Supreme Court has not seen it as being structured that way. They have treated, especially in Koteny, which is our most recent decision on the case, on this issue, they have interpreted that as an additional provision that allows the — supports the anti-stacking. And that third sentence is clearly one that does eliminate any stacking, whether you're with the same policy or a different policy. And the way we know that is because it says motor vehicles insured by us can't be stacked or added to the insured vehicle that applies to the laws. And when you look at the definition of the insured vehicle, it's not all three of them. It's an insured vehicle covered in this policy. So what that means is there's only one insured vehicle that can respond to coverage for a loss. And I think that's a fairly clear interpretation. Now, could — would a layman require there to be a separation? All I can say is our Nevada Supreme Court has not found that to be a necessity. And in Koteny, they relied on that provision. Are there any — there were things said at the beginning of this that I do want to mention. And I had a presentation that's now sort of broken up a little bit because of the questioning, and I appreciate that. But I do think the Court is right on when it says that an insured, if it reads the whole of this, is going to know that there's no stacking. There's no ability to add more coverage than coverage on one of your insured vehicles in this policy. That's the heart of it. And they're not going to think reasonably — it's not going to be difficult for them to understand that stacking is eliminated under all circumstances, even under a bicycle circumstance. Are there any other questions? I have no questions. Okay. All right. Thank you, counsel. We'll give you a few minutes. Why don't we just say three minutes for rebuttal? I don't know that you'll need all that time, but — yeah. Just a couple of quick comments in response to this. If we were to assume for the sake of discussion that the third sentence was some catch-all, you can't stack under any circumstances type of scenario, I don't think anybody would read it that way, as a layperson or as a lawyer or even in the insurance industry, because what it would do is it would make the whole preceding part superfluous. It would just be one sentence that says, you can't stack under any circumstances. A more rational way to do this, a more understandable way to do this, I think, is to either put in a subpart C, which I suggested in my brief, that under no — irrespective of A and B, under no circumstances will we allow stacking, something to that effect. Or I sat down, actually, and drafted up what I thought was a clear third sentence, and if I could offer it to the Court to — Just read it. Oh, okay. Only one of your insured autos covers the loss. You cannot add or stack coverage from any other auto insured by us on this policy or any other policy upon the coverage provided by the one insured auto that covers the loss. I mean, you could come up with a thousand different ways of expressing this. They just took that because it had been validated by the Nevada Supreme Court. I mean, I think nobody's disputing that, right? Right, right. From a structural standpoint, the third sentence actually plays very nicely into subparts A and B. And I think that whoever originally drafted this a long time ago that GEICO glommed onto and put it in its policy, what they were trying to do was they were trying to prevent stacking in subparts A and B. And the reason is, is because the third sentence talks about an insured auto that covers the loss. And so if you go up to subpart A, if you're in an insured auto, that particular insured auto covers the loss. It's defined in the policy. Under subpart B, they say one particular auto in the declarations page covers the loss. Once you get beyond that particular scenario, which this provision was designed to take care of, the thing starts to fall apart. You're on a bicycle. You're sitting on your couch at home watching TV and somebody runs through your living room window. That's what I wanted to ask you about, and you started to do that. I wanted to know, outside of A and B and being a pedestrian, what are some of the other responsibilities of being insured under the policy? Yeah, I think, you know, if you're on a bicycle, perhaps if you're, you know, pushing, somebody's pushing you on a cart, if you're sitting in, if you're playing, your kids are playing in the front yard and somebody runs over the curb and hits them. Or as I said before, if you're sitting on your couch watching TV and a drunk driver comes through and hits you and runs through your living room window. The scenarios are really kind of endless, but a very logical scenario that would occur often is bicyclists who are all the time riding on the road. And so for Mr. Jacobi, in particular, although it's really an average insured, he looks at this and says, I don't see anything about bicycles in here at all. And plus, an insured auto that covers the loss is not defined anywhere in here because I don't fall under A and B. So it looks like insured auto, I go to the declarations page, they're all, they all cover the loss. Therefore, it looks to me like I'm covered. That's the type of scenario. I can appreciate GEICO trying to get their provision straight. I understand the Court's concern about my technical argument, but GEICO drafted this policy. They're the ones that put the definition in there. They're the ones that utilize the structure. Okay. All right. Thank you, counsel. We appreciate the helpful arguments on both sides. The case just argued will stand submitted. Thank you.
judges: Oliver, Gould, Watford